[No. B012708. Second Dist., Div. Three. Mar. 3, 1986.]

GOLF WEST OF KENTUCKY, INC., et al.,
Plaintiffs and Respondents, v.
LIFE INVESTORS, INC., et al., Defendants and Appellants.

## COUNSEL

McCutchen, Black, Verleger & Shea, Philip K. Verleger and Vernon T. Meador III for Defendants and Appellants.

Cartwright, Sucherman & Slobodin, Robert E. Cartwright and Daniel U. Smith for Plaintiffs and Respondents.

## OPINION

**KLEIN, P. J.**—Defendants and appellants Life Investors, Inc., Confidence Golf Sales, Inc., Bill McDonald and Carl McManis (collectively Life Investors) appeal from an order of the superior court which (1) awarded them as costs on appeal only the premium on a surety bond posted on appeal, to the exclusion of fees paid for letters of credit secured in connection with said bond; and (2) apportioned the allowed costs between plaintiffs and respondents Golf West of Kentucky, Inc., (Golf West) and Charles Will (Will), rather than holding Golf West and Will jointly and severally liable for those costs.

There is no authority for awarding Life Investors as costs on appeal any fees paid for letters of credit. Further, the mere fact Golf West and Will consolidated their actions does not give rise to joint and several liability for costs. The order therefore is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 1980, Golf West and Will filed separate complaints against Life Investors, alleging, inter alia, Life Investors had wrongfully terminated their exclusive franchises to distribute Life Investors' golf clubs. The two cases were subsequently consolidated. Golf West and Will each obtained verdicts in their favor; Golf West was awarded $775,929 compensatory and $3,255,000 punitive damages, while Will obtained $1,748,460 compensatory and $3,255,000 punitive damages.

Life Investors appealed and posted an appeal bond with an annual premium of $19,034. On appeal, Division Three of this court reversed and remanded the cases for trial.

Life Investors then filed a memorandum of costs on appeal, seeking $267,117.48. This sum was based on the $57,102 premium paid on the appeal bond and $210,015.48 fees paid to two banks for letters of credit to secure said bond.

Following a motion by Golf West and Will to tax costs, the trial court awarded Life Investors as costs only the amount spent on the appeal bond premium, denying recovery of fees related to the letters of credit. The trial court also apportioned the costs on appeal between Golf West and Will, in proportion to the respective judgments which each had earlier obtained.

This appeal followed.

CONTENTIONS

Life Investors contends it was error: (1) to exclude the fees paid for the letters of credit from the cost of the premium for the appeal bond; and (2) to apportion the costs between Golf West and Will, rather than holding them jointly and severally liable for those costs.

DISCUSSION

1. *There is no authority for an award of fees for letters of credit as costs on appeal.*

Code of Civil Procedure section 995.250 states: "If a statute allows costs to a party in an action or proceeding, the costs shall include all of the following: [¶] (a) The premium on a bond reasonably paid by the party pursuant to a statute that provides for the bond in the action or proceeding. [¶] (b) The premium on a bond reasonably paid by the party in connection with the action or proceeding, unless the court determines that the bond was unnecessary."

California Rules of Court, rule 26(c) (rule 26(c)) provides in pertinent part: "The party to whom costs are awarded may recover *only the follow-ing,* when actually incurred: . . . (5) the premium on any surety bond pro-cured by the party recovering costs, unless the court to which the remittitur is transmitted determines that the bond was unnecessary." (Italics added.)

"Rule 26 of the Rules on Appeal provides that the party to whom costs are awarded may recover 'only' the items expressly provided for therein. . . . The language is clear and leaves no room for the exercise of any discretion." (*Lane* v. *Pacific Greyhound Lines* (1947) 30 Cal.2d 914, 918 [187 P.2d 9].)

"Costs recoverable [on appeal] are only those recoverable by statute or rule of court *even though the item may be a reasonable one.*" (*Muller* v. *Reagh* (1959) 170 Cal.App.2d 151, 153 [338 P.2d 601], italics added.)

Prior to the enactment of the statute,[1] the question of recoverable costs was governed by rule 26(c), and the premium paid on an appeal bond was *not* listed. (*Crag Lumber Co., Inc.* v. *Crofoot* (1958) 156 Cal.App.2d 568, 570 [319 P.2d 668]; see e.g. *Moss* v. *Underwriters' Report, Inc.* (1938) 12 Cal.2d 266, 274-275 [83 P.2d 503] [bond premiums struck from cost bill].)

[1]Former Code of Civil Procedure section 1035, added by statutes 1951, and continued in new Code of Civil Procedure section 995.250, added by statutes 1982, set forth *ante.*

We can find no case that interprets the word *premium* for the purposes here involved. A resort to Black's Law Dictionary (5th ed. 1979) defines *premium* as "[t]he sum paid or agreed to be paid by an insured to the underwriter (insurer) as the consideration for the insurance. The price for insurance protection for a specified period of exposure."

Life Investors argues the fees for the letters of credit were in effect a prerequisite to obtaining the surety bond, and thus were part of the premium paid. It maintains despite the strict construction of rule 26(c) specifically providing for costs on appeal, *premium* includes any consideration given for the insurance, whether to the insurer or to a third party; in other words, recoverable costs should allow any expenses necessarily incurred in securing a surety bond.

We decline endorsing such a broad interpretation as suggested by Life Investors. To do so would substantially expand the range of recoverable costs, particularly under these facts, where the ratio of the fees for the letters of credit to the appeal bond premium is nearly 4 to 1.

Modification of costs recoverable on appeal is best left to the Legislature with its fact finding capabilities through hearings at which all interested parties may have input.

Further, by way of analogy, most appellants as a practical matter are forced to retain the services of an attorney in prosecuting an appeal. Rule 26(c)(2) provides recovery for "the reasonable cost of printing or reproduction of briefs by other process of duplication; . . ." The reality that employing the services of an attorney may be a prerequisite to the drafting of the briefs to be duplicated does not support the inclusion in the cost bill of attorney's fees on that basis.

The trial court acted properly in denying recovery for fees incurred in connection with the letters of credit.

2. *Apportionment of costs between Golf West and Will was proper.*

Life Investors contends because Golf West and Will elected to consolidate their cases, they should be jointly and severally liable for the costs on appeal.

In *Weck* v. *L. A. County Flood Control Dist.* (1948) 89 Cal.App.2d 278, 281 [200 P.2d 806], the court considered whether plaintiffs in several actions became a single party within the meaning of rule 26(c) by reason of

the consolidation of the actions for trial, and concluded "[c]learly, they did not. The consolidation was only for the purpose of saving time and expense and did not convert the separate actions into a single action for any other purpose. Separate appeals were taken from separate judgments and each appellant was to be regarded as a party to his own appeal, in the application of the rules on appeal. Nor was the separate status of the several appellants altered by the fact that they joined in a single set of briefs, or by the further fact that the points on appeal may have been common to all of them."

"Though contained in a single document, settled practice warrants the separate treatment of the two judgments for purposes of award of costs." (*Combs* v. *Haddock* (1962) 209 Cal.App.2d 627, 632 [26 Cal.Rptr. 252].) However, Life Investors maintains the cases relied on by Golf West and Will as supporting apportionment are factually distinguishable; in each, a party filed an appeal from several judgments and achieved mixed results, judgments against some parties being affirmed and against others reversed. Life Investors argues *Combs* is inapplicable, where as here, both Golf West and Will lost on appeal.

Nevertheless, Life Investors fails to show any basis for joint and several liability on the part of Golf West and Will. In *Avalos* v. *Welty* (1965) 237 Cal.App.2d 545, 547 [47 Cal.Rptr. 447], "[e]ach of the two plaintiffs sued upon a separate cause of action which might have been the basis of a separate action. Neither plaintiff had an interest in the recovery of the other."

The *Avalos* court held in such a situation each party should claim costs separately. (*Ibid.*)

The rationale of *Avalos* is equally applicable here. Golf West and Will could have prosecuted their actions separately. Neither had any interest in the recovery of the other. The trial court thus properly apportioned the costs between them.

Further, the basis of the apportionment was rational. Golf West and Will were to pay the cost of the bond premium in proportion to their respective judgments. As a result, each party's share of the costs reflected the amount of the premium that Life Investors was forced to incur in appealing from the judgment of each.

Finally, to impose joint and several liability on litigants who elect to consolidate their actions is to penalize parties for promoting judicial economy. There is no reason in logic or law to place litigants in a position of having to choose between prosecuting their actions individually, or consol-

idating their claims and potentially being held jointly and severally liable for costs, which may amount to a substantial sum.

The order is affirmed.

Lui, J., and Danielson, J., concurred.