Filed 2/13/14  Aspell v. Mercury Casualty CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PATRICK ASPELL et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>MERCURY CASUALTY COMPANY,<br><br>Defendant and Respondent. | B244501<br><br>(Los Angeles County<br>Super. Ct. No. BC451722) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Joseph R. Kalin and Elizabeth A. White, Judges.  Affirmed.

Cohen McKeon, Michael L. Cohen, Heather M. McKeon; Law Offices of Neil R. Anapol, Neil R. Anapol for Plaintiffs and Appellants.

Hager Dowling Lim & Slack, John V. Hager, Benjamin J. Carman, Brian S. Dewey for Defendant and Respondent.

_____

Forty-nine homeowners sued their insurer, Mercury Casualty Company, claiming that they were inadequately compensated for ash, soot and smoke damage from a nearby wildfire. A jury found in favor of the insurer. Plaintiffs contend that (1) the trial court improperly allowed Mercury to present opinion testimony from an undesignated expert; (2) the special verdict form was defective; and (3) the trial court erroneously denied their motion seeking an apportionment of costs. We affirm.

## PROCEDURAL HISTORY[1]

Plaintiffs made claims against Mercury for property damage stemming from the 2009 Station wildfire. Their claims were denied or minimized. The complaint asserts causes of action for breach of contract, bad faith, and unfair business practices.

The dispute was tried in 2012. Dozens of witnesses testified and hundreds of exhibits were admitted. After brief deliberations, the jury unanimously answered "No" to the following question: "Did defendant Mercury Casualty Company fail to pay benefits owed under the insurance policies issued to any of the plaintiffs?" Judgment was entered in favor of Mercury on July 5, 2012. Plaintiffs filed a timely appeal.

## DISCUSSION

### 1. Witness Larry Wayne

Plaintiffs contend that the trial court allowed Larry Wayne to testify at trial "despite Mercury's failure to designate him as an expert of any kind and its failure to disclose Wayne's identity during discovery." Citing its appendix pages 239-252, Mercury claims that Wayne is on the Joint Witness List; however, the cited pages do not list Wayne as one of the 110 witnesses that Mercury intended to present at trial, nor is Wayne among the three retained experts and nine non-retained experts in Mercury's "written exchange of required expert witness information" served in January 2012. The

---

[1]    There is a six-volume reporter's transcript, yet plaintiffs did not provide a summary of the evidence produced at trial. (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739 ["In every appeal, 'the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment.'"].)

list names six of Wayne's colleagues and their mutual employer, Forensic Analytical Consulting Services (FACS), as non-retained experts.

During trial, plaintiffs moved to exclude Wayne from testifying because Mercury did not identify Wayne as a witness, so they were unfairly deprived of an opportunity to depose him. Mercury explained to the trial court that Wayne "is the individual who designed the protocol" used by his FACS colleague, Steven Takahashi, who was listed as a witness. Defense counsel claimed that Wayne is on the joint witness list.

Plaintiffs countered that FACS named Takahashi as the person most knowledgeable, not Wayne. Echoing defense counsel's mistaken claim that Wayne was identified in the joint witness list, the trial court asked plaintiffs' counsel, "When the name was put on the trial list, didn't that ring a bell somewhere that this is somebody that's going to testify?" After plaintiffs' counsel replied, "No," the court said, "Counsel, if he was on the witness list . . . he could be deposed. He could have been questioned."

Wayne testified regarding FACS test results, supposedly as a percipient witness. Plaintiffs objected repeatedly that Wayne was giving expert testimony regarding the standard for testing for the presence of char and ash. None of the objections were sustained.

The Discovery Act contemplates a mutual and simultaneous exchange by all parties of a list containing the name of persons whose expert opinion is expected to be offered in evidence at trial. (Code Civ. Proc., § 2034.210;[2] *Fairfax v. Lords* (2006) 138 Cal.App.4th 1019, 1025.) Under limited conditions, a party may make a motion to augment the list, but time must be afforded to allow the deposition of the newly added expert. (§§ 2034.610, 2034.620.) The testimony of an unlisted expert must be excluded from evidence. (§ 2034.300.) A party may call an expert witness who has not been previously designated to impeach the testimony of an expert witness offered by another party at trial. (§ 2034.310.)

---

[2]     Unlabeled statutory references in this opinion are to the Code of Civil Procedure.

3

Mercury did not comply with the discovery statutes, but was allowed to present the testimony of Larry Wayne because it told the trial court that Wayne was a designated witness. It is bad that Mercury's counsel orally misrepresented to the trial court that Wayne was designated as a witness, but worse that Mercury continues the charade on appeal, when the witness lists are in the record and Wayne's name is not on them.

We cannot reverse the judgment just because Mercury presented an undesignated witness. The constitutional standard for reversal reads, "No judgment shall be set aside . . . on the ground of . . . the improper admission . . . of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) "No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (§ 475.)

Plaintiffs contend that "Wayne's testimony was directly relevant to the amount of damage to Plaintiffs' homes due to ash, smoke, and soot." What they fail to demonstrate, however, is why the admission of Wayne's testimony resulted in a miscarriage of justice. Plaintiffs must show that the defendant's failure to comply with discovery statutes regarding the disclosure of expert witnesses resulted in a miscarriage of justice. (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 353.)

"Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.) "To establish prejudice, an appellant must show a reasonable probability exists that, in the absence of the error, he or she would have obtained a more favorable result." (*People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 887.) The burden of showing prejudicial error cannot be shifted onto

4

respondent, nor does the reviewing court have a duty to examine the record to find prejudice. (*Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248, 1268.)

Plaintiffs did not give a fair summary of the evidence. (See fn. 1, *ante.*) Without it, this court cannot determine whether Wayne's testimony altered the outcome of the trial. Wayne's testimony may have been cumulative or merely explanatory of that offered by Steven Takahashi, his colleague at FACS. Conclusory claims of prejudice— or ignoring the issue of prejudice entirely—does not satisfy an appealing party's duty to demonstrate a miscarriage of justice sufficient to warrant reversal. Plaintiffs had to demonstrate a reasonable probability that they would have obtained a more favorable result had Wayne's testimony been excluded. They failed to make this showing, so there is no grounds for reversal. Similarly, plaintiffs fail to show that the exclusion of two of their witnesses altered the outcome.

## 2. Special Verdict Form

The special verdict read, "Did defendant Mercury Casualty Company fail to pay benefits owed under the insurance policies issued to any of the plaintiffs?" While discussing the verdict form, defense counsel indicated that plaintiffs wanted to add the word "all," so that it would read, "Did defendant Mercury Casualty Company fail to pay *all* benefits owed?" Defense counsel asserted that "all" is "argumentative." Plaintiffs' counsel replied that "all" merely clarifies whether some benefits remained to be paid. The trial court accepted the defense argument that the question to be answered by the jury was whether Mercury "failed to pay benefits that were owed under the insurance policy."

Plaintiffs did not ask the court to give the standard jury verdict form for insurance cases, CACI VF-2300. CACI VF-2300 reads, in relevant part, "Did [plaintiff] suffer a loss, [all or part of] which was covered under an insurance policy with [the insurer]?" Plaintiffs claim they submitted an alternative verdict form; however, "Plaintiffs' [Proposed] Special Verdict Form" at pages 415-428 of the appendix has no superior court file stamp and does not appear to have been submitted to the trial court or served on opposing counsel.

Critically, plaintiffs did not provide us with a transcript of closing argument, so we cannot see how the verdict form was explained to the jury. When instructional error is claimed, the State Constitution requires a determination "whether prejudice actually occurred in light of the entire record." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) This encompasses the evidence, the effect of other instructions, counsel's arguments, and indications from the jury that it was misled. (*Id.* at pp. 580-581.) Given plaintiffs' inadequate briefing on each of these points, there is no basis for reversal.

**3. <u>Apportionment of Costs</u>**

Mercury filed a costs memorandum seeking $138,703.56. Plaintiffs moved to tax costs on 12 items, then asked the court to allocate costs equally among all 49 of them, so that Mercury could not attempt to collect the entire amount from one or two of the plaintiffs. Mercury opposed plaintiffs' request, noting that plaintiffs did not object to language in the judgment stating that it was joint and several. On November 2, 2012, the trial court struck $4,645.90 from the costs bill and denied plaintiffs' untimely request to apportion the costs. The court also rejected plaintiffs' effort to amend the judgment to apportion costs.

On appeal, plaintiffs argue that the trial court's refusal to apportion the costs could potentially cause severe economic hardship, in the event that Mercury exercises its right to collect the entire amount from a single plaintiff.

Plaintiffs did not object to the proposed judgment in June 2012, and did not seek to apportion costs until October 2012, three months after judgment was entered. When a party submits a proposed judgment to the court, any party affected by the judgment may, within 10 days after service of the proposed judgment, serve and file objections to it. (Rule 3.1590(i)-(j), Cal. Rules of Court.) A plaintiff's failure to object to a joint judgment (or to the form of the judgment) precludes a claim of error on appeal. (*Miller v. San Francisco Church Exten. Soc.* (1932) 125 Cal.App. 85, 89; *Altvater v. Breckenridge* (1959) 174 Cal.App.2d 790, 795.)

In any event, the precise argument plaintiffs present here was made—and rejected—in *Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370 (*Acosta*).) In *Acosta*, SI

Corp. was sued by 101 homeowners for construction defects in their Palmdale housing tract. A jury returned a verdict for the defendant, who then filed a memorandum of costs for $122,795. The plaintiffs opposed the cost bill because it allocated costs jointly and severally, though their claims were separate. (*Id.* at p. 1373.) Division Four of this district wrote, "We have found no California authority to support the proposition that a defendant who is sued by several plaintiffs and who fully prevails against all of them bears the burden of apportioning costs where the plaintiffs were represented by the same law firm and pursued a single cause of action in a joint trial." (*Id.* at p. 1376.) The court added, "It is up to the plaintiffs in a motion to tax costs to point out that some costs are not related to the joint theory of liability, but are specific to a particular plaintiff, and it is therefore not fair to include these in a joint award." (*Ibid.*)

Here, 49 homeowners sued a single defendant in joint litigation on a single theory: Mercury's alleged failure to pay adequate compensation for smoke, soot and ash damage resulting from a wildfire. "While it is true that their damages were individual, there was a single theory of liability." (*Acosta*, *supra*, 129 Cal.App.4th at p. 1379.) As in *Acosta*, plaintiffs in the case at bench did not argue that some costs were not related to the joint theory of liability but are specific to a particular plaintiff. (Compare *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 374-375 [trial court did not abuse its discretion by allocating $2 million in attorney fees among 19 non-prevailing plaintiffs, using "equitable considerations . . . in appropriate circumstances."].)

Mercury is "entitled to a cost award against the plaintiffs jointly, and would then be entitled to collect that amount as it saw fit from the various plaintiffs. Any plaintiff who satisfied the cost award would be entitled to seek contribution from the other plaintiffs in a separate action." (*Acosta*, *supra*, 129 Cal.App.4th at p. 1374.) The trial court did not abuse its discretion by refusing to apportion the costs separately, which would require that Mercury pursue 49 people for $2,700 each, to recover the costs it is entitled to as the prevailing party. (§ 1032, subd. (b).)

7

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

                                              BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

8